UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Steven Libby,

    Plaintiff,

v.

Deputy Sheriff Kevin Lowe, *et al.*,

    Defendants.

Case No. 13 C 8895

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This matter concerns the allegedly wrongful arrest and prosecution of Plaintiff Steven Libby. Plaintiff brings this action against the following Defendants, Deputy Sheriff Kevin Lowe, Deputy Sheriff Willis Werner and Sheriff Mark Curran. Plaintiff alleges three claims: (1) false arrest against Deputies Lowe and Werner; (2) malicious prosecution against Deputy Lowe; and (3) indemnification against Sheriff Curran. Defendants moved for summary judgment on all claims [36]. That motion is granted.

**I.    Background**[1]

In February 2013, Plaintiff lived at 24022 North Forest Drive, Lake Zurich, Illinois with his wife, Tai-Fen Wendy Liu ("Wendy"), and their three children. DSOF ¶6. Plaintiff and his wife shared the home at 24022 North Forest Drive (the "Residence") as their marital home. Libby Dep. Tr. at 116:20-24. On both February

---

[1] Where possible, the facts in this section are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to Defendants' statement of undisputed facts [37], with Plaintiff's responses [63]. "PSOF" refers to Plaintiff's statement of additional facts [62], with Defendants' responses [65].

16, 2013 and February 17, 2013, Plaintiff got into arguments with his wife. DSOF ¶7. During or shortly after the February 17th argument, Wendy called the Lake County Sheriff's Office to report domestic abuse. DSOF ¶8. Two Sheriff's Office deputies (Deputies Vice and Zacharias) went to the Residence in response to that call. *Id*. Plaintiff explained to the deputies that he had told his wife he wanted a divorce, which made her angry. DSOF ¶9. The deputies responded by telling Plaintiff that if "someone doesn't leave, someone is going to jail." *Id*. After speaking with the deputies, Plaintiff decided to leave the Residence for the night of February 17, 2013 and stay with his parents. *Id*.

Plaintiff returned to the Residence on February 18, 2013 and found that his wife, children and car were not there. DSOF ¶10. Concerned about the safety of his children, Plaintiff called 911. *Id*. Deputy Maureen Kinyon responded to that call, but Plaintiff asked her to leave because he was not satisfied with her assistance. DSOF ¶¶11-12. After Deputy Kinyon left, Plaintiff called 911 to complain about her because – according to Plaintiff – she was "not really there to help." DSOF ¶¶12-13. Plaintiff told the 911 operator that Deputy Kinyon asked him "what the hell [he] was doing in [the] house because [he] committed battery last night." DSOF ¶13. The 911 operator sent Deputy Kinyon back out to the Residence for further assistance. *Id*. Upon her arrival, Plaintiff's father met Deputy Kinyon and relayed a message from his son to the Deputy to "Suck my dick." DSOF ¶14. Deputy Kinyon then entered the Residence and told Plaintiff to stop calling 911 or he would be arrested. Libby Dep. Tr. at 138:5-16.

Following Deputy Kinyon's visit, Plaintiff was alone in the Residence from February 18, 2013 to February 20, 2013. DSOF ¶15. During that time, Plaintiff made several changes to secure the Residence. *Id.* He locked the garage by sliding the bolt so that no one could enter, disabled the keypad on the front door by taking out the battery, and taped paper to the windows of the front door so that no one could see inside. *Id.* According to Wendy, Plaintiff also draped blankets and sheets over every window to the Residence. DSOF ¶15.[2]

On February 19, 2013, Plaintiff's wife obtained an Emergency Order of Protection (the "Order") from the Nineteenth Judicial Circuit Court of Lake County. DSOF ¶16. The Order granted her exclusive possession of the Residence, and stated "(Police Enforced) . . . Respondent [Steven Libby] is prohibited from entering or remaining present at the residence/household located at: 24022 North Forest, Lake Zurich, Illinois." DSOF Ex. 5.

On February 20, 2013 at approximately 9:15 a.m., Deputies Kinyon, Werner and Lowe knocked on Plaintiff's front door but he did not answer. DSOF Ex. 6. Plaintiff later explained that, at the time, he "didn't feel compelled to open the door if [he] wasn't under arrest." DSOF ¶17.

About two and a half hours later, Deputies Kinyon, Lowe and Werner arrived at the Residence for a second time, again attempting to serve Plaintiff with the

---

[2] In his answer to DSOF ¶15, Plaintiff denied that he draped blankets and sheets over the windows of the residence. [63] at ¶15. However, he did not cite any evidence in support of his denial, which is a violation of LR 56.1. As such, the denial will be disregarded as an unsupported fact, *Green v. Am. Fed'n of Teachers/Illinois Fed'n of Teachers Local 604*, No. 12 CV 1162, 2015 WL 1509776, at *1 (N.D. Ill. Mar. 30, 2015), and the testimony cited by Defendants' in DSOF ¶15 (Liu Dep. Tr. at 99-100) will be taken as an undisputed fact.

Order. DSOF ¶18. Plaintiff's wife, Wendy, was present during the second visit and told the Defendants that she saw Plaintiff look out at them from the second floor window. DSOF ¶19. Wendy gave the Defendants permission to enter the Residence and attempted to allow them in through the garage door, but found the door was bolted. DSOF ¶19. Wendy also gave the Defendants the access code to the front door, but the front door keypad was disabled. *Id.* They knocked on the door several times and, according to Deputy Lowe, announced they were with Lake County Sheriff's Department and wanted to serve paperwork. DSOF ¶20.[3] Wendy gave Defendants permission to forcefully break into the barricaded Residence after Plaintiff failed to respond to the deputies, and Deputy Lowe kicked in the front door. DSOF ¶20.

According to Plaintiff, the Defendants entered the Residence through the front door, called Plaintiff's name, asked him to come out, and announced that they had papers for him. DSOF ¶21. Plaintiff ignored the Defendants' commands to come out and instead hid in the basement. *Id.* Defendants searched for Plaintiff all throughout the Residence. DSOF ¶22. They saw the attic door open with the ladder down and assumed Plaintiff was hiding in the attic. *Id.* Defendants requested a K-9 unit to search that area of the house. *Id.*

---

[3] Plaintiff denies that any of the deputies ever said the word "serve," and claims that he testified that he did not know why Defendants were there. Ans. to DSOF ¶ 20. This is not sufficient to create an issue of material fact with regard to what the deputies *said* because Plaintiff has cited no evidence in support of his contention that the word "serve" was not used. In fact, in his own statement of additional facts the Plaintiff alleges that while "Defendant Lowe knocked on the door the second time, he tried to tell the Plaintiff that he was there to serve some 'paperwork.'" PSOF ¶12.

4

Plaintiff heard the Defendants searching for him and also heard them say: "we just have some papers to give you", "[w]e are not here to arrest you", and "[c]ome out or we are bringing the dogs in." *Id*. Plaintiff communicated with his sister while hiding in the basement and told her he was afraid of being arrested. DSOF ¶25. He also testified at his deposition that he thought the deputies were there to arrest him. DSOF ¶18. Plaintiff denied, however, knowing the type of papers the Defendants had to give him or that they were there for the "service of anything." PSOF ¶14.

Plaintiff emerged from the basement approximately thirty minutes after Defendants arrived at the Residence, DSOF ¶25, and Defendants told Plaintiff they were there to serve him with an Order of Protection. DSOF ¶26. As Deputy Kinyon read the Order, Plaintiff took two to three steps away from the deputies toward the kitchen, DSOF ¶27, and Deputy Lowe commanded him to stop. DSOF ¶28. The Defendants then arrested Plaintiff, and issued him a ticket for resisting/obstructing a peace officer. DSOF ¶31. Plaintiff generally denies this version of his arrest in his response to Defendants' Statement of Facts, but does not offer any evidence in support of his denial. *See* Ans. to DSOF ¶28. Instead, Plaintiff claimed in his deposition that Defendant Werner yelled that he was under arrest for being a "Jagoff." PSOF ¶27.

The Lake County State's Attorney's Office charged Plaintiff with misdemeanor Obstruction of Service of Process. DSOF ¶35. Deputy Lowe did not know that the state charged Libby with Obstruction of Service of Process. *Id*.

5

There is also no evidence in the record that either of the other Defendants knew of that charge. Further, Deputy Lowe did not have any conversations with any Assistant State's Attorney regarding the charge brought against Plaintiff, *id.*, and none of the Defendants appeared in court or testified against Plaintiff. Libby Dep. Tr. at 157. In fact, there is no evidence in the record showing any participation by the Defendants in the judicial proceedings against the Plaintiff. Plaintiff did not have a preliminary hearing regarding the charge of Obstruction of Service of Process, and the charge was ultimately dismissed after two motions to dismiss. PSOF ¶34.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

### III. Analysis

Plaintiff alleges that the Defendants subjected him to false arrest and malicious prosecution. He additionally requests indemnification from the Sheriff if either Deputy Lowe or Werner are found liable for false arrest or malicious prosecution. Based on the record, however, the Court finds that Defendants are entitled to judgment as a matter of law – and therefore grants their motion for summary judgment.

#### A. False Arrest

Plaintiff claims that the Defendants falsely arrested him on February 20, 2013. A false arrest is "an unreasonable seizure, prohibited by the Fourth Amendment and actionable under 42 U.S.C. § 1983." *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003). It is well established that probable cause is an absolute defense to any §1983 claim for false arrest against a police officer. *Sangamon Cnty.*, 705 F.3d at 713. "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 714. This standard "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012).

7

Here, Defendants arrested Plaintiff for obstructing a peace officer. Thus, the Court must determine whether, based on the totality of facts and circumstances available to the Defendants, a reasonable officer in their position would believe Plaintiff committed, or was about to commit, the offense of obstructing a peace officer. That offense is defined by Illinois statute as: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1. Specifically, pursuant to Section 5/31-1(a), "a person commits obstruction or resistance of a peace officer when, 1) knowing that one is a peace officer, 2) he or she knowingly resists or obstructs, 3) the officer's performance of an authorized act." *Sangamon Cnty.*, 705 F.3d at 721. The word "obstruct" as used in the statute "encompasses physical conduct that literally creates an obstacle, as well as conduct the effect of which impedes or hinders progress." *People v. Baskerville*, 963 N.E.2d 898, 903 (Ill. 2012). The obstruction need not include an actual physical act. *Id.*

Illinois courts have found obstruction of a peace officer where: (1) the defendant repeatedly refused to comply with the officer's order to exit his vehicle, *People v. Synnott*, 811 N.E.2d 236, 240 (Ill. App. Ct. 2004); (2) the defendant refused to follow the officer's orders to disperse or leave the scene, *People v. Gordon*, 948 N.E.2d 282, 288 (Ill. App. Ct. 2011); and (3) the defendant refused to be fingerprinted or photographed at booking. *People v. Nasolo*, 977 N.E.2d 798, 892 (Ill. App. Ct. 2012). Additionally, although Illinois courts have not directly

addressed the issue, courts throughout the country have found that hiding from police officers constitutes obstruction under state statutes similar to the one at issue here.  *See, e.g.*, *State v. Grobstick*, 546 N.W.2d 187 (Wis. Ct. App. 1996); *People v. Allen*, 167 Cal. Rptr. 502, 505 (Cal. App. Ct. 1980); *Crapps v. State*, 155 So. 3d 1242, 1247 (Fla. Dist. Ct. App. 2015); *Cofield v. State*, 695 S.E.2d 696 (Ga. App. Ct. 2010); *State v. Ferebee*, 630 S.E.2d 460 (N.C. App. Ct. 2006).

*People v. Synnott*, 811 N.E.2d 236, 240 (Ill. App. Ct. 2004) is particularly instructive.  In *Synott*, the arrested defendant challenged his conviction for obstructing a peace officer on the basis that the state had neither alleged nor proved that he committed a physical act.  *Id*. at 237.  The officer had pulled defendant over for speeding, noticed that the defendant appeared drunk, and repeatedly ordered the defendant to exit his car.  *Id*.  The defendant refused.  *Id*.  The court found this sufficient to show the obstruction of a peace officer under 720 ILCS 5/31-1.  *Id*.

Here, the totality of the facts known to Defendants at the time of arrest show that a reasonable officer could have believed that Plaintiff had obstructed a peace officer by defying the Defendants' commands, hiding, and attempting to elude them. On February 20, 2013, Defendants were authorized to serve Plaintiff with an Order of Protection that required Plaintiff's removal from the Residence.  DSOF ¶16. Before Defendants arrived at the Residence, Plaintiff had barricaded himself in by bolting the garage door, disabling the front door keypad, taping paper over the front door windows, and draping blankets/sheets over the other windows.  DSOF ¶15.

Deputies Lowe, Warner and Kinyon knocked on the door several times and told the Plaintiff they had papers for him. DSOF ¶18. Wendy, who was then present with the deputies, saw the Plaintiff look out the second floor window and informed the deputies. DSOF ¶19. Plaintiff did not let the deputies into the house despite hearing them state they had papers to give him. DSOF ¶18. By his own admission, he thought the deputies were there to arrest him, and thus he was resisting that attempt. DSOF ¶18. The deputies searched the Residence for another way to enter, but found none. DSOF ¶19. They returned to the front door, knocked several more times, said they were with the Sheriff's department, and again said that they were there to serve paperwork. DSOF ¶20; PSOF ¶12. While Plaintiff denies knowing that the deputies were there to "serve" anything, there is no evidence in the record disputing the deputies' testimony that they said they were there to serve paperwork. *Id*. Because Plaintiff had barricaded the house and refused to let the deputies enter, the deputies were forced to break down the door to gain entry. DSOF ¶20.

Upon entering the house, the deputies began yelling Plaintiff's name, telling him to come out, and saying they had papers for him. DSOF ¶21. Plaintiff disobeyed their orders and remained hiding in the basement. *Id*. The deputies, however, believed Plaintiff was in the attic, so they requested a K-9 unit to help search that area. DSOF ¶22. Plaintiff specifically heard the deputies say they had papers for him, but did not obey their orders to come out of hiding for roughly thirty minutes. DSOF ¶¶23-25. When Plaintiff finally emerged from the basement, the

deputies told him they were there to serve him with an Order of Protection. DSOF ¶26. While the deputies were reading the order, Plaintiff stepped away from the deputies. DSOF ¶27. The deputies told him to stop, but he did not. DSOF ¶28. At that point, Plaintiff was arrested for resisting/obstructing a peace officer. DSOF ¶¶30-31.

Importantly, the totality of facts known to the deputies includes two pieces of information: (1) that they repeatedly announced they were there to serve paperwork, and (2) that the Plaintiff took several obstructive measures in response. Plaintiff's obstructive actions included barricading the house, refusing to respond to the deputies, ignoring commands from the deputies, hiding for approximately thirty minutes until the deputies called a K-9 unit, and then walking away from the deputies while they read the Order. Under these circumstances, a reasonable officer could conclude that Plaintiff was knowingly impeding or hindering the progress of the deputies. Thus, there was probable cause to arrest Plaintiff for obstructing a peace officer.

Plaintiff advances four arguments against this finding. First, Plaintiff claims that Defendants could not have reasonably believed that he had knowledge of their authorized act. Plaintiff argues that, after "Defendants attempted to make themselves known, their actions did not reasonably give notice to the Plaintiff of the Defendants' official duty that he supposedly obstructed." [61] P. Br. at 7. The Court disagrees. The issue here is whether a reasonable officer could have believed that Plaintiff "knowingly resist[ed] or obstructed[ed] the performance by one known

to be a peace officer . . . of any authorized act." 720 ILCS 5/31-1(a). Here, at several times in their search of the house, Defendants said that they were there to serve paperwork. While Plaintiff disputes whether he heard this, there is uncontradicted testimony in the record that Defendants announced both their office and purpose repeatedly. Thus, given the facts as a whole known to the deputies at the time, it was reasonable for Defendants to believe that the Plaintiff was obstructing the performance of their duties.

Second, the Plaintiff argues that his obstruction is cured by the fact that he eventually complied and came out from hiding. In support, Plaintiff cites *People v. Weathington*, 411 N.E.2d 862, 864 (Ill. 1980), where the Court found that refusing to answer questions for "a brief time" at booking was not an obstruction because the arrested defendant eventually did answer the questions. Plaintiff in this matter, however, committed various acts of obstruction that far exceed the facts presented in *Weathington*. Here, the Plaintiff hid for over half an hour, disobeyed multiple orders to come out, and forced the deputies to call a K-9 squad to assist in locating him. His eventual compliance, which occurred upon his arrest approximately thirty minutes after the encounter began, did nothing to cure his obstruction.

Third, Plaintiff argues that his walking a few steps away could not be considered obstruction as it was not a "material impediment." This argument neglects to consider the "totality of the circumstances" as the Court is required to do. As set forth above, the totality of the circumstances (including Plaintiff's decision to walk away from the deputies) shows a clear course of obstruction by the

12

Plaintiff. The cases cited by Plaintiff all address minor delays – mostly a number of seconds. *See* [61] P. Br. at 9-10. Here, Plaintiff created a significant delay and impediment for the Defendants, including hiding and refusing to comply with police orders for approximately thirty minutes.

To the extent the Plaintiff is arguing that the Court should ignore the totality of his actions in hiding and attempting to elude the deputies, and focus only on the 2-3 steps he took away from them, that argument is unavailing. The Defendants were not required to arrest Plaintiff immediately after he stopped hiding and disobeying their orders. Instead, an "officer having reasonable grounds to arrest has discretion to perform that arrest immediately, later, or never." *People v. Martinez*, 717 N.E.2d 535, 539 (Ill. App. Ct. 1999). As such, the Court considers the totality of Plaintiff's actions and finds that those actions were sufficient to create probable cause for his arrest.

Finally, Plaintiff argues that there is a genuine issue of material fact as to whether Defendant Werner arrested Plaintiff in good faith, or maliciously without probable cause. Plaintiff contends that "Officer Werner told him that he was arresting him for being a 'jag-off', which is clearly not a reason associated with probable cause." P. Br. at 11. This argument wrongly pre-supposes that the Court's analysis should be based on a particular defendant's subjective reasoning for the arrest. That is an incorrect reading of Illinois law.

Illinois courts have held that the "objective reasonableness of the facts relevant to a probable cause determination is paramount, and the officer's

subjective intentions are irrelevant." *People v. Long*, 861 N.E.2d 335, 340 (Ill. App. Ct. 2007). The test for probable cause is whether a reasonable officer in the same position would believe that Plaintiff committed, or was about to commit, an offense. *Sangamon Cnty.*, 705 F.3d at 714. Thus, whether Plaintiff was told that he was being arrested because he was acting like a "jag-off" is irrelevant to the Court's analysis here. As explained above, the totality of the circumstances show a reasonable basis for believing that an offense had been committed – which is sufficient to show probable cause. As such, this Court grants Defendants' motion for summary judgment on Count I.

**B. Qualified Immunity**

Even if the Court were to find that there was not probable cause, summary judgment would nonetheless be granted in favor of Defendants because they are entitled to qualified immunity on the claim for false arrest. The doctrine of qualified immunity protects government officials from liability as long as their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Weinmann v. McClone*, 787 F.3d 444, 447 (7th Cir. 2015); *Forman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir. 1997) (In evaluating claims for qualified immunity, courts must conduct a two-part analysis, first asking if the alleged conduct set out a constitutional violation; and if so, were the constitutional standards clearly established at the time in question).

As part of this analysis, defendants are entitled to qualified immunity in a false-arrest case, even in the absence of probable cause, if a reasonable officer could have mistakenly believed there was probable cause. *Fleming v. Livingston Cnty.*,

14

*Ill.*, 674 F.3d 874 (7th Cir. 2012). In other words, if there is "arguable probable cause," the defendant is entitled to qualified immunity. *Sangamon Cnty.*, 705 F.3d at 715. Here, given the factual scenario described above, the Defendants had, at the very least, arguable probable cause to believe that the Plaintiff was obstructing a peace officer. As such, the Defendants are entitled to qualified immunity on the claim of false arrest.

### C. Malicious Prosecution

To prevail on his malicious prosecution claim against Deputy Lowe, Plaintiff must show that: "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996). A finding that there was probable cause precludes a malicious prosecution claim. *Sparing v. Vill. of Olympia Fields*, 77 F. Supp. 2d 891 (N.D. Ill. 1999) *aff'd,* 266 F.3d 684 (7th Cir. 2001). Plaintiff's claim here fails because probable cause existed for his arrest, and for the offense for which he was eventually charged – Obstruction of Service of Process.

Illinois law defines the crime for which Plaintiff was arrested (Obstruction of a Peace Officer) as follows: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1. Similarly, Obstruction of Service of Process is defined as: "Whoever

15

knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor." 720 ILCS 5/31-3. Due to their similarity, courts commonly interpret these two statutes in a similar fashion. *See Silverman v. Ballantine*, 694 F.2d 1091 (7th Cir. 1982); *People v. Meister*, 290 Ill. App. 3d 337 (4th Dist. 1997).

As noted above, the facts here support probable cause both for Plaintiff's arrest and for the charge of Obstruction of Service of Process. Here, Defendants repeatedly stated they were at the Residence to serve papers. Despite this, Plaintiff barricaded the house, ignored commands from the deputies, hid for approximately thirty minutes, forced the deputies to call in a K-9 unit, and walked away from the deputies despite their order that he stop. Under the totality of the circumstances in this matter, a reasonable officer could believe that Plaintiff "knowingly resist[ed] or obstruct[ed] the authorized service or execution of [a] civil or criminal process or order." 720 ILCS 5/31-3. Consequently, this Court grants Defendants' motion for summary judgment on the claim for malicious prosecution as well.

### D. Indemnification

Under the Illinois indemnification statute, "a local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." 745 ILCS 10/9-102. Because this Court has granted summary judgment

16

on Plaintiff's claims for false arrest and malicious prosecution, the indemnification claim fails. Summary judgment is granted in favor of Defendants on Count III.

## IV. Conclusion

In light of the foregoing, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED

Dated: October 13, 2015　　　　　　　　　Entered:

John Robert Blakey